State
vs.
Mitchell Brouchemin

Ind. No. 16680.

November 9, 1933.

JOSLIN, J. Heard on motion for new trial after verdict of guilty by the jury.

The defendant was indicted for assault upon Louise Passano with intent to murder her. The crime is alleged to have been committed in North Smithfield on the evening of July 28, 1932.

The State claims that on the evening in question, the defendant took Mrs. Passano in his automobile and, proceeding through some of the back roads to the junction of Farnum and Douglas Pikes, drove into the woods for a short distance; that the defendant told Mrs. Passano to get out of the car; that he then grabbed her by the throat, struck her on the head several times with a black-jack and left her there in the belief that she was dead.

The defendant is 32 years of age. He was a police constable in the town of Smithfield and the caretaker of a mill. He and Paul Passano, husband of Mrs. Passano, had been friends for many years. Each of them married at about the same time and their wives were friendly. They visited each other's homes and they went automobiling together.

Mrs. Passano testified that on three different occasions between February and June, 1932, she had intimate relations with the defendant as a result of which she became pregnant. She informed the defendant of her condition. Through the innocent agency of the defendant's wife, pills were secured for Mrs. Passano and when these did not have the desired effect of a mis-

carriage, the defendant himself procured other pills. These also proved ineffectual.

It is clear that both the defendant and Mrs. Passano were greatly worried about the situation. The defendant then suggested taking her to a physician for the purpose of having an abortion performed. It was on the supposed trip to the physician that the assault was committed.

The defendant denied the assault. He denied ever having been intimate with her. His defense was an alibi. He sought to show that he had been "framed" by Mr. Passano, who, the defendant asserted, was the one responsible for the criminal deed.

After Mrs. Passano recovered consciousness, she managed to reach the road and there hailed a passing motorist who took her to the home of her mother-in-law. The nature of the wounds on her body indicate that an effort was made to choke her and that she was struck on the head several times by an instrument which could very well have been a black-jack.

The shoes worn by the defendant on the night of the assault were examined and there was found evidence of human blood. The foot-brake pedal on the defendant's car as well as the black-jack found under the rear seat of his automobile bore evidences of human blood. The defendant admitted that the black-jack had once been his. He had given it to the Club of which he was a member about a year previously. Mr. Passano was not a member of the Club. The black-jack had been missing for a week prior to the assault. On the day after the assault the defendant's right hand was swollen. This could easily have been occasioned by and during his use of the black-jack. The defendant attempted an explanation for each of the foregoing circumstances. Those explanations were as unconvincing to the Court as apparently they were to the jury.

The defendant attempted to prove his movements from early in the evening until a late hour of the night in question. According to his own testimony, he was in the Club House at 8:30 o'clock and admitted he saw Mr. and Mrs. Passano pass in their car on the way to Centredale. Mrs. Passano and the defendant waved to each other. Although denied by the defendant, we believe, as claimed by Mrs. Passano, that this was a pre-arranged signal that the appointment was to be kept at the agreed place.

After a careful review of all the testimony, we are convinced that the defendant's story of his movements on the night of the assault does not account for at least one hour after about 8:40 o'clock, during which time the assault was committed. In the opinion of the Court, the State proved beyond a reasonable doubt the presence of the defendant at the time and place that the assault was committed.

The first explanation of the attack given by Mrs. Passano when she arrived at her mother-in-law's house was that three men had attacked her on the road. The next day when she was at the hospital, she believed she was going to die. Being pressed then for the truth as to her assailant, she told her husband that she would tell the truth if he promised not to hurt the man. She then informed the police for the first time that it was the defendant whom she charged. The defendant stresses this circumstance as evidence of the fact that it was Mr. Passano who was the assailant and that it was at this interview with his wife that he induced her to put the blame on the defendant in order to save himself. No conceivable reason appears for Mr. Passano to murder his wife or to do her serious bodily injury. Their relations were not strained. He did not know of the wrong his wife had done, nor did he suspect the defendant of any wrongdoing.

The defendant urges that there was no motive for the attempted murder. Motive is not an essential ingredient of the crime, although it is true that absence of motive may be considered in determining the question of intention. Nevertheless, there was ample motive. The defendant was greatly worried. He repeatedly asked Mrs. Passano whether her husband knew about their relations. He was afraid of the consequences if Mr. Passano found out. He was a well respected man in the community. If the truth were found out, he had everything to lose. The matter was preying upon his mind. In desperation, to quiet the only one who could tell on him, he decided to do away with her. He did not use his constable's gun; the shot might have been heard: the bullet could have been traced to his gun. He used the black-jack and hid it in the rear of the car. In the excitement of the hours that followed, he had no clear opportunity to dispose of it.

Defendant's counsel argues that, assuming an assault with the black-jack to have been proved against the defendant, there was no evidence of any intent on his part to commit murder. The jury were charged that an essential ingredient of the crime charged in the indictment was the intention; also that if said intention were not proved beyond a reasonable doubt, they had the right to convict for a lesser offense.

In the nature of the case, there could be no direct evidence of intent to murder. There were, however, many and sufficient circumstances from which the jury could, as in fact they did, naturally and reasonably infer such an intent. Among these may be mentioned the acts and conduct of the defendant prior to the assault, the nature of the weapon employed, the force with which it was used as evidenced by the injuries inflicted, and the flight of the defendant.

The evidence of Mrs. Passano and the defendant himself, together with the many corroborating incriminating circumstances, some of which have been here referred to, satisfies the Court that the jury were fully warranted in finding the defendant guilty beyond a reasonable doubt of the crime charged in the indictment.

For the foregoing reasons, motion for new trial is denied.

For State: Attorney General.

For defendant: James A. Kiernan, Fred M. Langton, J. William Grande.